IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| SUNTRUST BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| 890 HENDERSONVILLE ROAD, LLC, | ) COMPLAINT |
| JOE C. BRUMIT II, | ) |
| CHARLES D. OWEN III, and | ) |
| GREGORY A. EDNEY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

The plaintiff, complaining of the defendants, alleges:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, SunTrust Bank ("***SunTrust***"), is a Georgia banking corporation with its principal office and place of business in Atlanta, Georgia.

2. Upon information and belief, defendant 890 Hendersonville Road, LLC ("***Borrower***")[1] is a North Carolina limited liability company with an office and place of business in Buncombe County, North Carolina. Borrower can be served with process on its registered agent, Charles D. Owen III, at its registered mailing address of 33 Busbee Road, Asheville, North Carolina 28803, and at its registered office address of 1550 Hendersonville Road, Suite 208, Asheville, North Carolina 28803.

3. Upon information and belief, defendant Joe C. Brumit II ("***Brumit***") is a resident of Buncombe County, North Carolina. Brumit can be served with process at 234 Skycliff Drive, Asheville, North Carolina 28804.

---

[1] Borrower was formerly known as Northwest Property Group – Biltmore #1, LLC. Borrower changed its name to 890 Hendersonville Road, LLC pursuant to an amendment of its Articles of Organization dated September 18, 2009 and filed with the North Carolina Secretary of State on October 7, 2009.

1

4. Upon information and belief, defendant Charles D. Owen III ("*Owen*") is a resident of Buncombe County, North Carolina. Owen can be served with process at 31 Busbee Road, Asheville, North Carolina 28803.

5. Upon information and belief, defendant Gregory A. Edney ("*Edney*") is a resident of Buncombe County, North Carolina. Edney can be served with process at 303 S. Braeside Court, Asheville, North Carolina 28803. Brumit, Owen, and Edney are collectively referred to as the "*Guarantors*".

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), this being a civil action where the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs, and is between citizens of different states.

7. This Court has personal jurisdiction over defendants because defendants reside in this state and district; defendants have conducted business in this state and district; and defendants otherwise have committed acts in this state and in this district that are the subjects of the claims set forth herein.

8. Venue is proper in this Court under the provisions of 28 U.S.C. § 1391(a)(1) and (a)(2).

## FACTS

### Promissory Note and Loan Agreement

9. On or about September 18, 2007, Borrower executed and delivered to SunTrust a Promissory Note payable by Borrower to the order of SunTrust in the principal amount of up to $6,151,000.00 (the "*Note*"). A true and accurate copy of the Note is attached hereto as <u>Exhibit A</u> and is fully incorporated herein by reference.

10. In connection with the Note, Borrower executed and delivered to SunTrust a Loan Agreement dated September 18, 2007. A true and accurate copy of the Loan Agreement is attached hereto as <u>Exhibit B</u> and is fully incorporated herein by reference.

11. The terms and conditions of the Loan Agreement are expressly incorporated in the Note. Per section 8(a)(iii) of the Note, an event of default under the Loan Agreement also constitutes an event of default under the Note.

12. The purpose of the loan evidenced by the Note and Loan Agreement was to finance Borrower's construction of commercial improvements on two adjacent parcels of real estate that Borrower intended to acquire in Buncombe County, North Carolina (collectively the "***Project***").

13. Among other things, the Loan Agreement described Borrower's obligations for construction of the Project, as well as the terms and conditions under which SunTrust was required to fund principal advances under the Note. Between September 18, 2007 and September 18, 2009 (the "***Construction Period***"), Borrower was obligated under the Loan Agreement to complete construction of the Project. Monthly payments of accrued interest only were due under the Note on the 14th day of each month during the Construction Period. Commencing on October 14, 2009, the Note required Borrower to begin paying SunTrust monthly principal payments in addition to interest, with a maturity date of September 14, 2012.

## Swap Agreement

14. In connection with the Note, Borrower and SunTrust entered into an interest rate swap transaction evidenced by the following documents (collectively the "***Swap Agreement***"):

(a) ISDA Master Agreement, including the Schedule thereto, dated September 7, 2007 ("***ISDA Agreement***"), a true and accurate copy of which is attached hereto as Exhibit C and is fully incorporated herein by reference; and

(b) Confirmation of Swap Transaction dated September 12, 2007 ("***Swap Confirmation***"), a true and accurate copy of which is attached hereto as Exhibit D and is fully incorporated herein by reference.

15. The Swap Agreement obligates the parties to exchange monthly payments calculated on a "notional amount", with SunTrust paying Borrower the variable annual rate of

3

LIBOR plus 1.65%, and Borrower paying SunTrust the fixed annual rate of 6.84%. These payments were to be netted against each other each month, with the party paying the higher of the two rates delivering payment to the other party representing the difference in the two payment amounts.

16. The purpose of the Swap Agreement was to hedge Borrower's anticipated interest rate exposure under the Note after the conclusion of the Construction Period. The Swap Agreement was accordingly done as a "forward-starting" transaction with an effective date of September 14, 2009 and the first payment date on October 14, 2009, which coincided with Borrower's obligation to commence principal repayments under the Note. As set forth on Schedule A of the Swap Confirmation, the notional amount of the Swap Agreement was set at $6,151,000.00 for the period beginning on September 14, 2009 and ending on October 14, 2009, with monthly reductions thereafter corresponding to Borrower's anticipated principal payments under the Note. In addition, the Swap Agreement was to terminate on September 14, 2012, the scheduled maturity date of the Note.

17. Although the Note and Swap Agreement were executed as part of the same commercial transaction, they are separate and independently enforceable contracts.

## Guaranties

18. In connection with the Note and Swap Agreement, Brumit executed a Guaranty Agreement dated September 18, 2007 (the "***Brumit Guaranty***"). A true and accurate copy of the Brumit Guaranty is attached hereto as Exhibit E and is fully incorporated herein by reference. Under the Brumit Guaranty, Brumit unconditionally guaranteed the timely payment and performance of Borrower's obligations to SunTrust, including but not limited to the Note and Swap Agreement.

19. In connection with the Note and Swap Agreement, Owen executed a Guaranty Agreement dated September 18, 2007 (the "***Owen Guaranty***"). A true and accurate copy of the Owen Guaranty is attached hereto as Exhibit F and is fully incorporated herein by reference. Under

the Owen Guaranty, Owen unconditionally guaranteed the timely payment and performance of Borrower's obligations to SunTrust, including but not limited to the Note and Swap Agreement.

20. In connection with the Note and Swap Agreement, Edney executed a Guaranty Agreement dated September 18, 2007 (the "***Edney Guaranty***"). A true and accurate copy of the Edney Guaranty is attached hereto as <u>Exhibit G</u> and is fully incorporated herein by reference. Under the Edney Guaranty, Edney unconditionally guaranteed the timely payment and performance of Borrower's obligations to SunTrust, including but not limited to the Note and Swap Agreement.

## Advances and Default under the Note

21. In accordance with the Note and Loan Agreement, Borrower requested and SunTrust funded the following advances under the Note:

    (a) $391,500.00 on September 18, 2007;

    (b) $88,372.57 on September 27, 2007; and

    (c) $131,734.83 on January 24, 2008.

22. The purpose of these three advances was to finance Borrower's acquisition of one of the two parcels of commercial property upon which the Project was to be built, together with disbursements for related architectural, engineering, and legal services.

23. After January 2008, SunTrust did not fund any further advances under the Note.

24. Borrower paid SunTrust monthly interest payments as required under the Note from October 2007 until August 2009.

25. Upon information and belief, Borrower never acquired the second commercial parcel upon which the Project was to be built.

26. Under the Loan Agreement, Borrower was obligated to complete construction of the Project on or before September 18, 2009, which it failed to do. As of September 19, 2009, Borrower was in default under the Note and Loan Agreement for failing to timely complete the Project.

27. On or about December 23, 2009, SunTrust sent letters to each of the defendants (collectively the "*Note Demand Letters*") declaring the Note and Loan Agreement in default, accelerating the balance of the Note, and demanding immediate payment thereof. True and accurate copies of the Note Demand Letters are attached hereto as Exhibit H and are fully incorporated herein by reference.

28. The Note Demand Letters gave notice to each of the defendants that SunTrust intended to enforce the attorneys' fees provisions contained in the Note, Loan Agreement, and Guaranties in accordance with N.C. Gen. Stat. § 6-21.2.

29. Since the Note Demand Letters were sent, the defendants have made certain interest payments under the Note, but have made no principal payments.

30. The Note, Loan Agreement and Guaranties remain in default.

### Default under the Swap Agreement

31. Borrower was obligated under the Swap Agreement to deliver the following payments to SunTrust on the following dates:

    a) $25,353.65 due on October 14, 2009;

    b) $26,162.27 due on November 16, 2009[2]; and

    c) $25,314.84 due on December 14, 2009.

32. Borrower failed to deliver the foregoing payments to SunTrust.

33. SunTrust sent Borrower a Notice of Potential Event of Default on January 4, 2010, a true and accurate copy of which is attached hereto as Exhibit I and is fully incorporated herein by reference. In accordance with Section 5(a)(i) of the ISDA Agreement, the Notice of Potential Event of Default gave Borrower a period of three (3) business days to cure its defaults in respect of the missed payments.

---

[2] This payment came due on Monday, November 16, 2009 because November 14, 2009 fell on a Saturday.

34. Borrower failed to deliver any payments in response to the Notice of Potential Event of Default.

35. SunTrust exercised its right to terminate the Swap Agreement and demanded immediate payment of the Termination Amount of $689,177.15[3] by letter dated January 14, 2010 (the "***Swap Demand Letter***"), a true and accurate copy of which is attached hereto as Exhibit J and is fully incorporated herein by reference.

36. Defendants have made no payments in response to the Swap Demand Letter. The Swap Agreement remains in default.

**FIRST CLAIM FOR RELIEF**
(Action on Note / Breach of Contract)

37. SunTrust incorporates each prior allegation of the Complaint as if fully set forth herein.

38. The Note is a valid and enforceable contract between SunTrust and Borrower.

39. SunTrust has performed all of its obligations under the Note and Loan Agreement.

40. Borrower has breached the contract and is in default under the Note for failing to complete the Project as and when required under the Loan Agreement, and by failing to comply with SunTrust's demand of payment in full.

41. As of February 19, 2010, the balance owed on the Note, exclusive of attorneys' fees, was as follows:

| | |
|---|---|
| Principal | $ 605,856.86 |
| Accrued Interest | 3,898.93 |
| Late Fees | 1,256.67 |
| **Total** | **$ 611,012.46** |

Interest continues to accrue on the Note at the current per diem rate of $98.94.

---

[3] As set forth below, the Termination Amount due under the Swap Agreement is comprised of the missed swap payments plus a Settlement Amount calculated in accordance with Section 6(e) of the ISDA Agreement.

42. SunTrust has been damaged by Borrower's failure to pay the amounts owed under the Note.

43. SunTrust is entitled to a judgment against Borrower under the Note in the amount of $611,012.46, plus interest from and after February 19, 2010 at the "Default Rate" as defined in the Note.

## SECOND CLAIM FOR RELIEF
(Action on Swap Agreement / Breach of Contract)

44. SunTrust incorporates each prior allegation of the Complaint as if fully set forth herein.

45. The Swap Agreement is a valid and enforceable contract between SunTrust and Borrower.

46. SunTrust has performed all of its obligations under the Swap Agreement.

47. Borrower has breached the contract and is in default under the Swap Agreement for failing to make payments as and when due, and by failing to comply with SunTrust's demand for payment of the Termination Amount.

48. SunTrust hereby gives each of the defendants notice pursuant to N.C. Gen. Stat. §6-21.2 that it intends to enforce the attorneys' fees provisions contained in the Swap Agreement. However, if defendants pay the Termination Amount in full within five (5) days of service of this Complaint, then the attorneys' fees provisions in the Swap Agreement shall be unenforceable.

49. SunTrust has been damaged by Borrower's failure to pay the amounts owed under the Swap Agreement.

50. SunTrust is entitled to a judgment against Borrower under the Swap Agreement in the amount of $689,177.15, plus interest from and after January 12, 2010 at the "Default Rate" as defined in the ISDA Agreement.

## THIRD CLAIM FOR RELIEF
(Action on Guaranties / Breach of Contract)

51. SunTrust incorporates each prior allegation of the Complaint as if fully set forth herein.

52. The Brumit Guaranty is a valid and enforceable contract between SunTrust and Brumit.

53. The Owen Guaranty is a valid and enforceable contract between SunTrust and Owen.

54. The Edney Guaranty is a valid and enforceable contract between SunTrust and Edney.

55. SunTrust has performed all of its obligations under the Note, Swap Agreement, and Guaranties.

56. Brumit has breached the Brumit Guaranty by failing to discharge all of Borrower's obligations under the Note and Swap Agreement.

57. Owen has breached the Owen Guaranty by failing to discharge all of Borrower's obligations under the Note and Swap Agreement.

58. Edney has breached the Edney Guaranty by failing to discharge all of Borrower's obligations under the Note and Swap Agreement.

59. SunTrust has been damaged by the Guarantors' failure to pay the amounts owed under the Guaranties, Note, and Swap Agreement.

60. SunTrust is entitled to a judgment against the Guarantors, jointly and severally, under the Guaranties in the amounts set forth in paragraphs 43 and 50.

**WHEREFORE**, SunTrust respectfully prays that the Court:

A. Enter judgment in favor of SunTrust and against Borrower under the Note in the amount of $611,012.46, plus interest from and after February 19, 2010 at the "Default Rate" as defined in the Note;

B. Enter judgment in favor of SunTrust and against Borrower under the Swap Agreement in the amount of $689,177.15, plus interest from and after January 12, 2010 at the "Default Rate" as defined in the ISDA Agreement;

C. Enter judgment in favor of SunTrust and against the Guarantors, jointly and severally, under the Guaranties in the amount of (1) $611,012.46, plus interest from and after February 19, 2010 at the "Default Rate" as defined in the Note, and (2) $689,177.15, plus interest from and after January 12, 2010 at the "Default Rate" as defined in the ISDA Agreement;

D. Award SunTrust reasonable attorneys' fees in accordance with N.C. Gen. Stat. § 6-21.2;

E. Tax the costs of this action jointly and severally against the defendants; and

F. Grant SunTrust such other and further relief as the Court deems just and proper.

This the 24th day of February, 2010.

/s/ Kiah T. Ford IV, Esq.
Kiah T. Ford IV, Esq.
Matthew P. Weiner, Esq.
PARKER POE ADAMS & BERNSTEIN LLP
401 South Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 335-4482
chipford@parkerpoe.com
mattweiner@parkerpoe.com
*Attorneys for Plaintiff*