IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1: 10 CV 50

SUNTRUST BANK,
    Plaintiff,

v.

**MOTION TO DISMISS,
ANSWER & COUNTERCLAIM**

890 HENDERSONVILLE ROAD, LLC,
JOE C. BRUMIT, II, CHARLES D.
OWEN, III, and GREGORY A. EDNEY,
    Defendants.
_____/

**NOW COME** the Defendants, 890 Hendersonville Road, LLC, Joe C. Brumit, II, and Charles D. Owen, III and answers the Plaintiff's Complaint as follows:

## MOTION TO DISMISS

These answering Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure that this matter be dismissed for failure to state a claim in the Complaint upon which relief may be granted. Without waiving the foregoing, the aforementioned Defendants respond to the allegations of the Plaintiff as follows:

## ANSWER

1. The allegations contained in paragraph 1 of Plaintiff's Complaint are admitted.

2. The allegations contained in paragraph 2 of Plaintiff's Complaint are admitted.

3. The allegations contained in paragraph 3 of Plaintiff's Complaint are admitted.

4. The allegations contained in paragraph 4 of Plaintiff's Complaint are admitted.

5. The allegations contained in paragraph 5 of Plaintiff's Complaint are admitted upon information and belief insofar as the location of Defendant Gregory Edney. These answering Defendants further admit that Brumit and Owen are referred to the in Complaint as Guarantors, but subject to the defenses and factual denials based herein, deny that they are in fact Guarantors as alleged by Plaintiff. Except as hereinabove admitted, all remaining allegations of paragraph 5 of Plaintiff's Complaint are denied.

6.  The allegations contained in paragraph 6 of Plaintiff's Complaint are admitted.

7.  It is admitted that these Defendants reside in this State and district and that they have further conducted business in the State and district. Except as hereinabove admitted, all remaining allegations of paragraph 7 of Plaintiff's Complaint are denied.

8.  It is admitted that the proper venue of this matter is the Asheville Division since all acts complained of and alleged in Plaintiff's Complaint occurred in Asheville, North Carolina, not in Charlotte. Except as hereinabove admitted, all remaining allegations of paragraph 8 of Plaintiff's Complaint are denied.

9.  The allegations contained in paragraph 9 of Plaintiff's Complaint are admitted.

10.  The allegations contained in paragraph 10 of Plaintiff's Complaint are admitted.

11.  It is admitted that the loan agreement is a document in writing and that since such document is in writing, such document shall speak for itself. Except as hereinabove admitted, all remaining allegations of paragraph 11 of Plaintiff's Complaint are denied.

12.  The allegations contained in paragraph 12 of Plaintiff's Complaint are admitted.

13.  It is admitted that the loan agreement described borrower's obligations for construction of the project and that such obligation was conditioned upon Borrower's acquisition of two parcels of land to be used in conjunction with said project. Since the documents are in writing, said documents shall speak for themselves. Except as hereinabove admitted, all remaining allegations of paragraph 13 of Plaintiff's Complaint are denied.

14.  The allegations contained in paragraph 14 of Plaintiff's Complaint are denied for the reason set forth hereinafter. The ISDA Master Agreement purportedly entered into by Greg Edney on behalf of Northwest Property Group-Biltmore #1, LLC bears a date under Mr. Edney's purported signature of September 21, 2007 and a date on behalf of Suntrust of October 1, 2007. As set forth hereinafter, Plaintiff had been transmitted an email by Defendant Joe Brumit on September 10, 2007 indicating that they (referring to all Defendants did not desire to go forward with the Swap Agreement). A copy of said email is marked Exhibit 1 and attached hereto and incorporated herein by reference. Except as hereinabove admitted, all remaining allegations of paragraph 14 of Plaintiff's Complaint are denied.

15.  Without admitting that the "Swap Agreement" was in any way legal and binding, it is admitted that the document is in writing and will speak for itself. Except as

hereinabove admitted, all remaining allegations of paragraph 15 of Plaintiff's Complaint are denied.

16. The allegations contained in paragraph 16 of Plaintiff's Complaint are denied.

17. It is admitted that the note was executed as a separate and independent contract. Except as hereinabove admitted, all remaining allegations of paragraph 17 of Plaintiff's Complaint are denied.

18. It is admitted that the Defendant Brumit executed the document marked Exhibit E attached to Plaintiff's Complaint. However, it is expressly alleged that Defendant Brumit on his behalf and on behalf of all other Defendants, sent an email to Suntrust Bank prior to the execution of the Guaranty Agreement, wherein Suntrust was told that Defendants did not desire to go through with the Swap Agreement. Such email is attached hereto and marked Exhibit 1. Except as hereinabove admitted, all remaining allegations of paragraph 18 of Plaintiff's Complaint are denied.

19. It is admitted that the Defendant Owen executed the document marked Exhibit F attached to Plaintiff's Complaint. However, it is expressly alleged that Defendant Brumit on behalf of Defendant Owen, sent an email to Suntrust Bank prior to the execution of the Guaranty Agreement, wherein Suntrust was told that Defendants (including Owen and Brumit) did not desire to go through with the Swap Agreement. Such email is attached hereto and marked Exhibit 1. Except as hereinabove admitted, all remaining allegations of paragraph 19 of Plaintiff's Complaint are denied.

20. These answering Defendants are without sufficient information with which to form a belief as to the truth of the allegations contained in paragraph 20 of Plaintiff's Complaint, and the same are therefore denied.

21. The allegations contained in paragraph 21 of Plaintiff's Complaint are admitted.

22. The allegations contained in paragraph 22 of Plaintiff's Complaint are admitted.

23. The allegations contained in paragraph 23 of Plaintiff's Complaint are admitted.

24. The allegations contained in paragraph 24 of Plaintiff's Complaint are admitted. It is further alleged that Borrowers have paid Suntrust every monthly interest payment for which they have been invoiced and done so in a timely fashion.

25. The allegations contained in paragraph 25 of Plaintiff's Complaint are admitted.

26. It is admitted that the Borrowers did not complete the construction of the project on or before September 18, 2009 since they were unable to acquire the second parcel of land for reasons, which were beyond their control. Except as hereinabove admitted, all remaining allegations of paragraph 26 of Plaintiff's Complaint are denied.

27. It is admitted that the letters were sent by Suntrust to these Defendants. Since such letters are in writing, such letters shall speak for themselves. Except as hereinabove admitted, all remaining allegations of paragraph 27 of Plaintiff's Complaint are denied.

28. Since such letter is in writing it shall speak for itself. Except as hereinabove admitted, all remaining allegations of paragraph 27 of Plaintiff's Complaint are denied.

29. It is admitted that since the demand letters were sent that interest payments have been paid and accepted by Defendant SunTrust, but no principal payments have been made. It is further alleged that the parcel of land securing the note is under contract to be sold to the local ABC board. It is anticipated that such closing will take place within 60 days from the date of the filing of this Answer and that such funds will be sufficient to pay the note in full. Except as hereinabove admitted, all remaining allegations of paragraph 29 of Plaintiff's Complaint are denied.

30. The allegations contained in paragraph 30 of Plaintiff's Complaint are denied.

31. For the reasons set forth hereinafter, the allegations contained in paragraph 31 of Plaintiff's Complaint are denied.

32. For the reasons set forth hereinafter, the allegations contained in paragraph 32 of Plaintiff's Complaint are denied

33. It is admitted that the document marked Exhibit I was sent to the Borrowers on January 4, 2010. Except as hereinabove admitted, all remaining allegations of paragraph 33 of Plaintiff's Complaint are denied.

34. It is admitted that these Borrowers have not made any payments in response to the Notice of Potential Event of Default. Except as hereinabove admitted, all remaining allegations of paragraph 34 of Plaintiff's Complaint are denied.

35. It is admitted that Suntrust has purported to exercise its right to terminate the Swap Agreement and has made demand for $689,177.15. It is expressly denied that any amount is legally owed and for the reasons set forth hereinafter, these answering Defendants deny that they have any legal responsibility to make any such payment to Suntrust and that Suntrust has acted in bad faith and ignored the express previous written instructions of these Defendants, all to benefit itself and by undertaking no risk whatsoever. Except as hereinabove admitted, all remaining allegations of paragraph 35 of Plaintiff's Complaint are denied.

36. It is admitted that these Defendants have made no payments in response to the "Swap Demand Letter." Except as hereinabove admitted, all remaining allegations of paragraph 36 of Plaintiff's Complaint are denied.

### ANSWERING FIRST CLAIM FOR RELIEF

37. These answering Defendants hereby incorporate their prior responses to each of the prior allegations of Plaintiff as set forth fully herein.

38. The allegations contained in paragraph 38 of Plaintiff's Complaint are admitted.

39. It is admitted that Suntrust performed all of its obligations under the note. Except as hereinabove admitted, all remaining allegations of paragraph 39 of Plaintiff's Complaint are denied.

40. The allegations contained in paragraph 40 of Plaintiff's Complaint are denied for the reasons set forth hereinafter.

41. It is admitted that the principal amount of the indebtedness is $605,856.86 is hereby owed. Except as hereinabove admitted, all remaining allegations of paragraph 41 of Plaintiff's Complaint are denied.

42. The allegations contained in paragraph 42 of Plaintiff's Complaint are denied.

43. The allegations contained in paragraph 43 of Plaintiff's Complaint are denied.

### ANSWERING SECOND CLAIM FOR RELIEF

44. These answering Defendants hereby incorporate their prior responses to each of the prior allegations of Plaintiff as set forth fully herein.

45. The allegations contained in paragraph 45 of Plaintiff's Complaint are denied.

46. The allegations contained in paragraph 46 of Plaintiff's Complaint are denied.

47. The allegations contained in paragraph 47 of Plaintiff's Complaint are denied.

48. The allegations contained in paragraph 48 of Plaintiff's Complaint are denied.

49. The allegations contained in paragraph 49 of Plaintiff's Complaint are denied.

50. The allegations contained in paragraph 50 of Plaintiff's Complaint are denied.

### ANSWERING THIRD CLAIM FOR RELIEF

51. These answering Defendants hereby incorporate their prior responses to each of the prior allegations of Plaintiff as set forth fully herein.

52. It is admitted that the Brumit Guaranty is a valid and enforceable contract insofar as the original note entered into with Suntrust Bank for the principal amount of $605,856.86. Except as hereinabove admitted, all remaining allegations of paragraph 52 of Plaintiff's Complaint are denied.

53. It is admitted that the Owen Guaranty is a valid and enforceable contract insofar as the original note entered into with Suntrust Bank for the principal amount of $605,856.86. Except as hereinabove admitted, all remaining allegations of paragraph 53 of Plaintiff's Complaint are denied.

54. These answering Defendants are without sufficient information with which to form a belief as to the truth of the allegations contained in paragraph 54 of Plaintiff's Complaint, and the same are therefore denied.

55. The allegations contained in paragraph 55 of Plaintiff's Complaint are denied.

56. The allegations contained in paragraph 56 of Plaintiff's Complaint are denied.

57. The allegations contained in paragraph 57 of Plaintiff's Complaint are denied.

58. These answering Defendants are without sufficient information with which to form a belief as to the truth of the allegations contained in paragraph 58 of Plaintiff's Complaint, and the same are therefore denied.

59. The allegations contained in paragraph 59 of Plaintiff's Complaint are denied.

60. The allegations contained in paragraph 60 of Plaintiff's Complaint are denied.

### FIRST COUNTERCLAIM
### Fraud and Unfair Trade Practices

The Defendants Joe C. Brumit, II and Charles D. Owen, III, by way of counterclaim against the Plaintiff, allege and say as follows:

1. The allegations contained in paragraph 1 of Plaintiff's Complaint are hereby incorporated by reference.

2. The allegations contained in paragraph 3 of Plaintiff's Complaint are hereby incorporated by reference.

3. The allegations contained in paragraph 4 of Plaintiff's Complaint are hereby incorporated by reference.

4. Beginning in the summer of 2007, these counterclaiming Defendants began negotiations with Plaintiff herein to finance the purchase of two lots and the construction of a bank building to be located on said two lots.

5. The purchase of one lot was subject to a tax free exchange (Section 1031 swap) being executed.

6. Some time thereafter and prior to the execution of any documents by any parties, these counterclaimants were approached by a representative of Plaintiff about entering into a transaction involving a derivative called a "T-Lock."

7. On or about September 5, 2007, a representative of Plaintiff transmitted an email to Defendant Edney informing him that an uptick in the LIBOR made a swap more desirable for the loan, which at that time was scheduled to close on September 14, 2007.

8. The representative of Suntrust Bank indicated that she would make a presentation to Edney, Brumit and Owen, but no such presentation was ever made.

9. On or about September 6, 2007, an email was sent enclosing slides and indicating that the representative of Suntrust would be making a formal presentation the following week.

10. On Monday of the following week (September 10) at 11:36 p.m., Defendant Brumit transmitted to Coulter Warlick, an employee and representative of the Plaintiff herein, an email telling him that the Defendants were not interested in doing the swap. Copies of the email were also sent to other representatives of the Plaintiff.

11. That despite having received the aforementioned email communication from Defendant Brumit, Suntrust then proceeded to only communicate with Defendant Edney concerning the matter. These answering Defendants and counterclaimants were not informed of the execution of any documents by any person allegedly on their behalf involving a swap.

12. Upon information and belief, it is alleged that individuals who failed to respond to Mr. Brumit's September 10 email, received a commission on the purported swap executed by Edney, unbeknownst to Brumit and Owen.

13. On or about September 14, 2007, it is alleged that Defendant Edney received an email from Suntrust Bank, which contained two confirmations in WORD format. These Defendants did not see any such email or attachments. The first confirmation was for a rate cap. The second confirmation was for confirmation of a swap transaction. The attachments to such email bore a date of September 14, 2007. It is alleged that Defendant Edney only executed the rate cap confirmation since he knew Defendants Brumit and Owen did not want to go forward with the swap. Defendant Edney then forwarded the executed rate cap confirmation to Holly Alderman, an attorney in Chapel Hill, who forwarded same to

Plaintiff's counsel. The package forwarded did not contain any "swap" documents, but did include the rate cap bearing date of September 14, 2007. The interest rate swap document attached to Plaintiff's complaint bears a date of September 12, 2007. These Defendants allege that such document has been altered as a part of Suntrust's attempt to conceal its actions. Despite having executed the rate cap agreement, the loan did not close until September 18, 2007.

14. Upon information and belief, it is alleged that the September 14, 2007 rate cap letter is the only derivative information that was transmitted in a loan closing package from Holly Alderman to Helms Mullis (attorneys who represented Plaintiff Suntrust Bank).

15. Upon information and belief, it is alleged that subsequent to the loan closing and on or about September 19, 2007, Suntrust mailed to Defendant Edney the master agreement and schedule concerning the "derivatives."

16. That despite having received the September 10, 2007 email from Defendant Brumit on behalf of all Defendants, indicating that Defendants did not want to go forward with the rate swap, Suntrust Bank proceeded to surreptitiously obtain the signature of Edney after the loan had in fact closed, which actions were contrary to the express written instructions by Brumit and in violation of the duty it owned to these Defendants. Plaintiff knew or should have known that any signature by Edney exceeded his authority to act on behalf of these answering Defendants.

17. The September 10, 2007 email transmission from Brumit to Coulter Warlick at Suntrust Bank said "We will hold off on a swap rate at this time. Please keep us informed on any further changes." Despite having requested to be kept informed, no response or communication was forwarded to either Brumit or Owen concerning the purported swap as alleged in Plaintiff's Complaint.

18. After receiving Brumit's email of September 10, 2007, Suntrust proceeded to send the confirmation documents to Edney, who was unfamiliar with swaps. Suntrust, despite knowing that Brumit and Owen, did not desire to go forward with the swap, acted contrary to the express written instructions of Brumit.

19. Suntrust continued to conceal its actions by failing to provide monthly statements regarding the purported swap. Upon information and belief, it is alleged that the "swap" was not entered into Suntrust's system until 2009.

20. Even if the "swap" had been executed prior to September 10, 2007, it could have been rescinded or undone, had these Defendants been told by Suntrust.

21. That the first communication received by any of these answering Defendants was on November 19, 2009 when they were informed that they owed in excess of $600,000.00 for a swap, which they didn't know existed and which they had neither authorized, but had expressly rejected.

22. Upon information and belief, it is alleged that the actions of Suntrust Bank and its representatives were not in compliance with the rules and regulations governing swaps.

23. Upon information and belief, it is alleged that signatures on documents were obtained post closing and backdated to make it appear that the transaction was completed prior to the communication from Brumit and in an effort to avoid any liability to anyone who was affected by Suntrust's actions.

24. Beginning in October 2008, the Atlanta office of Plaintiff contacted one of its representatives and asked her to get Mr. Edney to execute the swap document. Again, no one from Suntrust advised these Defendants of such actions.

25. Upon information and belief, it is alleged that Suntrust Bank and its representatives acting on its behalf, profited by such actions.

26. The aforementioned acts of Suntrust constitute an unfair and deceptive trade practice as that is defined in Chapter 75 of the North Carolina General Statutes.

27. Any attempt by Suntrust to enforce the guaranty of these answering Defendants constitutes unfair and deceptive trade practice since Suntrust knew Brumit and Owen had rejected a swap transaction.

28. That as a result of such fraudulent actions by Plaintiff, these answering Defendants have suffered and continue to incur compensatory damages in excess of $75,000.00.

29. The aforementioned actions of Suntrust were done willfully and intentionally with the intent to deceive these Defendants, and for the sole purpose of earning money for the Plaintiff all to Defendants detriment and Defendants are entitled to recover punitive damages from the Plaintiff.

## SECOND COUNTERCLAIM
## BREACH OF CONTRACT

30. These answering Defendants hereby incorporate their allegations in paragraphs 1 through 29 of the first counterclaim as if set forth herein.

31. Suntrust Bank knew these Defendants did not desire to go forward with the "swap."

32. That despite, having received such communication from Defendants, Suntrust contrary to the contract between Plaintiff and Defendants, continued to present documents to Edney for signature while never advising Brumit and Owen of the existence of such documents.

33.  Such actions constitute a breach of contract between Plaintiff and Defendants.

34.  As a result of such breach, Defendants have incurred losses in excess of $75,000.00.

### THIRD COUNTERCLAIM
### NEGLIGENCE

35.  These answering Defendants hereby incorporate their allegations in paragraphs 1 through 34 of the first counterclaim as if set forth herein.

36.  Suntrust Bank never made any presentation to any of these answering Defendants or Edney, which explained of attempted to explain derivatives, swaps, etc.

37.  Suntrust entrusted the communications involving the purported swap to a person who had received no training with regard to swaps, derivatives nor how such transactions were to be executed.

38.  Suntrust, once it discovered that any documents were signed by Edney after Brumit's email of September 10, 2007, should have notified Brumit and Owen so that such matter could have been addressed.

39.  Suntrust was negligent in not informing Brumit and Owen of the existence of the purported swap and by not notifying them, increased the expense of unwinding such purported transaction.

40.  Suntrust, by virtue of its knowledge of all events, owed a duty to inform Brumit and Owen of such matters, but neglected and failed to do so, all to the financial detriment of Brumit and Owen and to the benefit of Suntrust.

41.  That as a result of the negligence of Suntrust and its agents, Defendants Brumit and Owen have suffered compensatory damages in excess of $75,000.00.

42.  The negligence of Suntrust was willful and wanton and committed in an attempt to create a large profit for itself despite the duty it owed to Defendants.

43.  That as a result of the willful and wanton negligence of Suntrust, Plaintiffs are entitled to recover punitive damages from Suntrust.

**WHEREFORE**, these Defendants pray the Court as follows:

1.  The Plaintiffs have and recover nothing by way of their Complaint;

2. These answering Defendants receive compensatory damages in an amount in excess of $75,000.00;

3. These answering Defendants recover punitive damages in an amount in excess of $75,000.00;

4. That any amount received by these Defendants be trebled pursuant to Chapter 75 of the North Carolina General Statutes;

5. For a trial by jury; and

5. That these answering Defendants be awarded attorneys' fees and costs pursuant to Chapter 75 of the North Carolina General Statues

This the 4th day of May, 2010.

/s/ Ronald K. Payne
Ronald K. Payne
Long, Parker, Warren, Anderson & Payne, P.A.
P.O. Box 7216
Asheville, NC 28802
828/258-2296-telephone
828/253-1073-facsimile
ron@longparker.com
*Counsel for Defendants 890 Hendersonville Road, LLC, Joe C. Brumit, II & Charles D. Owen, III*

/s/ Philip S. Anderson
Philip S. Anderson
Long, Parker, Warren, Anderson & Payne, P.A.
P.O. Box 7216
Asheville, NC 28802
828/258-2296-telephone
828/253-1073-facsimile
philip@longparker.com
*Counsel for Defendants 890 Hendersonville Road, LLC, Joe C. Brumit, II & Charles D. Owen, III*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day served upon Plaintiff in the foregoing matter with a copy of this Answer in the manner prescribed by Federal Rules of Civil Procedure, by placing the copy in the U.S. mail in a postpaid envelope properly addressed as follows:

Kiah T. Ford, IV
Matthew P. Weiner
Parker, Poe, Adams & Bernstein, LLP
401 South Tryon Street, Ste. 3000
Charlotte, NC 28202

This, the 4th day of May, 2010.

By: /s/ *signature*
Ronald K. Payne
NC State Bar #: 7961

EXHIBIT 1

**From:** Joe Brumit
**Date:** 9/10/2007 11:36:14 PM
**To:** Warlick.Coulter
**Cc:** Gourlay.Laura; gae@nwpg-llc.com; cdo3@msn.com; Joe Brumit
**Subject:** RE: NW Property Group

Thanks for the information. Sorry to be so long getting back to you. Partners have been spread far and wide and discussing this has been a little slow. Based on our conversations though, we will hold off on a Swap Rate at this time. Please keep us informed on any further changes.

Thanks, Joe Brumit


--------Original Message--------

**From:** Warlick.Coulter
**Date:** 9/6/2007 12:39:52 PM
**To:** joeb@jbrumit.com
**Cc:** Gourlay.Laura; gae@nwpg-llc.com; cdo3@msn.com
**Subject:** RE: NW Property Group

Joe-
  Swap rates have come down .05 bps since we priced your financing on 08.29.07 when we were at 7.03%. Meanwhile, LIBOR has increased to 5.82%, the highest level in 6 years. Locking-in LIBOR today at 5.33% with a cap during construction and a forward starting swap (5.23% w/out the cap) would immediately bring your effective LIBOR rate down by nearly 50bps (5.82% - 5.33%).
  These rates were as of this morning and swap rates have risen a little bit since then but as of right now, we could still lock-in at the rates provided earlier today.
  Please feel free to give me a call at 704-571-3732 or Jason Cagle at 704-571-3732 if you have any questions.

Thank you,

Coulter Warlick
Capital Markets Originations
SunTrust Robinson Humphrey
o 704-571-3732 / c 919-260-4722 / f 704-571-3735
4720 Piedmont Row Dr., Suite 420
Charlotte, NC 28210
Coulter.Warlick@SunTrust.com

-----Original Message-----
From: Gourlay.Laura
Sent: Thursday, September 06, 2007 12:30 PM
To: Warlick.Coulter
Subject: Fw: NW Property Group